UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., THE ASSOCIATED PRESS, CABLE NEWS NETWORK LP, LLLP, CBS BROADCASTING INC., FOX NEWS NETWORK, L.L.C., and NBC UNIVERSAL, INC., | ) ) ) ) ) ) ) | 2:06-CV-01268-PMP-RJJ |
| Plaintiffs, | ) ) | O R D E R and PRELIMINARY INJUNCTION |
| v. | ) ) | |
| DEAN HELLER, in his official capacity as the SECRETARY OF STATE OF NEVADA, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs are news-gathering organizations which seek to conduct polls of voters leaving polling places in the State of Nevada at the forthcoming general election scheduled for November 7, 2006. Plaintiffs commenced this action on October 10, 2006, seeking declaratory and injunctive relief to enable them to conduct exit polls within the 100-foot barrier currently imposed under Nev. Rev. Stat. § 293.740(1)(a) which, among other things, makes it unlawful for any person to speak to a voter on the subject of marking their ballot ". . . within 100 feet from the entrance to the building or other structure in which a polling place is located."

Plaintiffs allege that to the extent the Nevada statute is enforced by Defendant Secretary of State of Nevada to prohibit exit polling within 100 feet of the entrance to Nevada polling places, the statute impermissibly restricts Plaintiffs' free speech and

commentary about the political process in violation of the First and Fourteenth Amendments to the United States Constitution.

Currently before the Court is Plaintiffs' Emergency Motion for Preliminary Injunction (Doc. #2), filed October 11, 2006, and Defendant's Motion to Dismiss (Doc. #10), filed October 20, 2006.  On October 31, 2006, the Court held a hearing regarding both Motions and expressed a preliminary ruling denying Defendant's Motion to Dismiss and granting Plaintiffs' Motion for Preliminary Injunction which ruling the Court now confirms.

## I.        FACTUAL BACKGROUND

The right of every citizen to vote at a polling place which is peaceful and free of disruption and harassment is fundamental to our democracy.  Clearly the State of Nevada has a compelling interest in protecting that right, and a variety of state and federal laws exist to ensure the voting rights of every citizen.  See Nev. Rev. Stat. §§ 293.710, 293.730, 293.740, and 42 U.S.C. § 1973i.  As news-gathering and reporting organizations, Plaintiffs also enjoy important speech and press rights protected under the First Amendment of the United States Constitution and made applicable to the states under the Fourteenth Amendment.  Indeed, the free flow of information and ideas protected under the First Amendment is essential to the ability of citizens to cast an informed vote, and to the robust discussion of governmental affairs.

Plaintiffs have retained two polling organizations, Edison Media Research ("Edison") and Mitofsky International ("Mitofsky") to assist them in conducting the exit polling.  (Compl. at ¶ 11; Emergency Mot. for Prelim. Inj. Relief & Mem. of P. & A. in Support Thereof [Doc. #2], Aff. of Joseph W. Lenski ["Lenski Aff."] at ¶ 1.)  Generally, an exit poll is conducted by the exit pollster approaching voters as they exit the polling location and asking them if they would like to participate in a voluntary, anonymous poll. (Compl. at ¶ 12; Lenski Aff. at ¶¶ 4-7.)  Plaintiffs argue the further away from the polling

place's exit the pollster must stand, the less reliable the exit poll results because of the possibility of the voter getting into his or her car and driving away or melding into a crowd of non-voters, and because it undermines the scientifically selected pattern of those to be polled (every fourth or fifth voter, for example).  (Compl. at ¶ 13; Lenski Aff. at ¶ 8.)

The statute at issue prohibits "any person to solicit a vote or speak to a voter on the subject of marking his ballot" within 100 feet from the polling place's entrance.  Nev. Rev. Stat. § 293.740(1)(a).  Violation of the statute gives rise to both criminal and civil penalties.  Nev. Rev. Stat. § 293.740(3) (gross misdemeanor); § 293.840 (civil penalty).

In October 2004, Plaintiffs requested Defendant construe the statute in such a way that it did not apply to exit polling.  (Emergency Mot. for Enlargement of Time Pursuant to FRCP 6(b) [Doc. #7], Ex. 1.)  Defendant responded by indicating he would "decline to allow exit polling within the 100 foot mark established by our state Legislature to protect voters from possible harassment and intimidation."  (Id., Ex. 2.)  Despite this response, in 2004, Plaintiffs conducted exit polling at some Nevada polling places within the 100-foot zone "without incident and without any complaint by the Secretary of State or any other election official."  (Compl. at ¶ 17; Lenski Aff at ¶ 21.)  According to Kristi D. Geiser, Program Officer with the Nevada Secretary of State's office, Nevada has received only four complaints alleging violations of § 293.740 since 1998, none of which pertained to exit polling.  (Mot. to Dismiss & Opp'n to Mot. for Prelim. Inj. Relief, Aff. of Geiser at ¶¶ 1-2.)  Geiser also states that to her knowledge, the Secretary of State's office has not civilly or criminally enforced § 293.740 or referred violations of the statute to any other entity for prosecution.  (Id. at ¶ 3.)

On September 16, 2006, Plaintiffs' representative, John W. Zucker,[1] contacted the Nevada Secretary of State's office and asked whether Defendant would permit Plaintiffs

---

[1]   John W. Zucker is Senior Vice President, Law and Regulation for ABC, Inc., parent company of Plaintiff American Broadcasting Companies, Inc.  (Zucker Aff. at ¶ 1.)

to conduct exit polls within the 100-foot zone in Nevada on November 7, 2006.  (Compl. at ¶ 18; Emergency Mot. for Prelim. Inj. Relief & Mem. of P. & A. in Support Thereof [Doc. #2], Aff. of John W. Zucker ["Zucker Aff."] at ¶ 2.)  On September 29, 2006, Ellick Hsu ("Hsu"), Deputy Secretary of State for Elections at the Office of the Nevada Secretary of State responded that Defendant would prohibit exit polling within 100 feet of polling places, citing Nevada Revised Statute § 293.740(1)(a).  (Compl. at ¶ 18; Zucker Aff. at ¶ 4.)

## II.      DISCUSSION

The foregoing events gave rise to the filing of Plaintiffs' Complaint less than one month prior to the general election and spawned Plaintiffs' Emergency Motion for Injunctive Relief.  Since this Court cannot decide the Emergency Motion for Injunctive Relief unless it has jurisdiction, the Court first will address Defendant's Motion to Dismiss.

### A.  MOTION TO DISMISS

Defendant argues Plaintiffs' claims are not ripe because Plaintiffs lack a concrete plan to violate the law, Plaintiffs are under no threat of prosecution, and by Plaintiffs' own allegations they have conducted exit polling in Nevada in the past without enforcement by Defendant.   Additionally, Defendant argues he is entitled to Eleventh Amendment immunity because Plaintiffs do not challenge any particular action Defendant has taken, and because criminal and civil violations of the relevant statute must be prosecuted either by a district attorney or the Attorney General.

Plaintiffs respond the case is ripe because Plaintiffs have stated their intent to violate Nev. Rev. Stat. § 293.740 on November 7, 2006 and Defendant has stated his intent to enforce that law by prohibiting exit polling within the 100-foot zone.  Plaintiffs also assert Defendant is not entitled to Eleventh Amendment immunity because Nevada law specifically vests Defendant with authority to enforce Nevada election law and Plaintiffs

have challenged both the statute's constitutionality as well as Defendant's decision that

§ 293.740 applies to exit polling.

## 1. Ripeness

"[R]ipeness is 'peculiarly a question of timing' . . . designed to 'prevent the

courts, through avoidance of premature adjudication, from entangling themselves in abstract

disagreements.'" Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th

Cir. 2000) (en banc) (quoting Regional Rail Reorg. Act Cases, 419 U.S. 102, 140 (1974) &

Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).  The ripeness doctrine contains both a

constitutional component derived from Article III limitations on judicial power and a

prudential component.  Id.  The constitutional component of the ripeness inquiry is similar

in scope to determining whether a party has suffered an injury in fact under a standing

analysis.  Id.; Ariz. Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1007

n.6 (9th Cir. 2003).  The plaintiff's injury must be "definite and concrete, not hypothetical

or abstract," and the plaintiff must face "a realistic danger of sustaining a direct injury as a

result of the statute's operation or enforcement."  Thomas, 220 F.3d at 1139 (quotations

omitted).  Injury that is "too imaginary or speculative" will not support a finding of

ripeness.  Id. (quotations omitted).  With respect to the prudential aspects of ripeness, the

Court considers whether the issues are fit for judicial decision and the hardship to the

parties if the Court declines to address the matter.  Id. at 1141.

## a. Constitutional Ripeness Inquiry

In some situations, individuals may challenge an allegedly unconstitutional

statute before the government has made any specific threat of prosecution or enforcement

against the plaintiff.  See Doe v. Bolton, 410 U.S. 179, 188-89 (1973) (finding physicians

had standing to challenge statute criminalizing abortions despite a lack of threatened

prosecution); see also Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298-99

(1979) ("When contesting the constitutionality of a criminal statute, it is not necessary that

the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights.") (quotation and alteration omitted).  However, the mere existence of a proscriptive statute or a generalized threat of prosecution is insufficient to establish a realistic threat of a definite and concrete injury.  Thomas, 220 F.3d at 1139.  "Rather, there must be a genuine threat of imminent prosecution."  Id. (quotation omitted).  To determine if there is a genuine threat of prosecution, the court evaluates whether "the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  Id.

These requirements are relaxed in the context of First Amendment protected speech.  Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094-95 (9th Cir. 2003).  A plaintiff raising a First Amendment claim need not speak first and risk criminal prosecution or enforcement but instead may challenge the law pre-enforcement.  Id.  This exception for First Amendment cases is based on the chilling effect of statutes that prohibit speech and the fear that individuals may self-censor rather than risk enforcement or prosecution, and thus the plaintiff is harmed through the suppression of his or her speech even without being prosecuted.  Id.; San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1129-30 (9th Cir. 1996).  Additionally, the public at large suffers when speech is chilled.  Dombrowski v. Pfister, 380 U.S. 479, 486-87 (1965).  Accordingly, where enforcement of the statute implicates free speech rights, the analysis "tilts dramatically toward a finding of standing."  Ariz. Right to Life Political Action Comm., 320 F.3d at 1006.

This exception for First Amendment speech is available only to a plaintiff who has "an actual and well-founded fear that the law will be enforced against [him or her]."  Cal. Pro-Life Council, Inc., 328 F.3d at 1095 (quotation omitted, alteration in original).  A fear of prosecution is well founded when the challenged statute arguably covers the

plaintiff's intended speech.  Id.; see also Am. Civil Liberties Union of Nev. v. Heller, 378 F.3d 979, 984 (9th Cir. 2004) ("In First Amendment cases, it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.") (quotation and alteration omitted).

### i. Concrete Plan to Violate the Law

A concrete plan to violate the law is not a hypothetical intent to violate the law, but includes particulars such as when, where, and under what circumstances.  Thomas, 220 F.3d at 1139.  "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan."  Id.; San Diego County Gun Rights Comm., 98 F.3d at 1127 (holding that a stated intention to violate the law "some day" without describing concrete plans was insufficient to establish standing).

Plaintiffs clearly have indicated the requisite concrete plan to violate the law. Plaintiffs have stated they intend to conduct exit polling within the 100-foot zone on November 7, 2006 at approximately 20 polling locations in Nevada.  Plaintiffs have identified the date, generally the location (there are a set number of polling places in Nevada, so the locations at which Plaintiffs may operate is a closed universe capable of determination), and the circumstances of how they intend to violate Nev. Rev. Stat. § 293.740.  Moreover, Plaintiffs have stated that they violated the statute during the 2004 election by conducting exit polling at certain polling locations in Nevada within the 100-foot zone and that they intend to do so again on November 7, 2006.  Plaintiffs therefore have established they have concrete plans to violate Nevada Revised Statute § 293.740 on November 7, 2006.

### ii. Threat of Enforcement

The threat of enforcement must be "credible, not simply imaginary or speculative."  Thomas, 220 F.3d at 1140 (quotations omitted).  Here, Plaintiffs have a well-

founded fear of enforcement.  Defendant, through his agent Hsu, recently advised Plaintiffs that Defendant would "prohibit" exit polling within the 100-foot zone.[2]  Plaintiffs' speech undisputably falls within the challenged statute's reach, as Defendant has indicated the statute prohibits exit polling within the 100-foot zone.  Defendant, in effect, is making Plaintiffs choose either to self-censor and stay outside the 100-foot zone or to risk being ejected from the 100-foot zone on November 7 and face possible civil and criminal penalties.  Under such circumstances, the Court finds Plaintiffs have a well-founded fear of enforcement and prosecution for conducting exit polls on November 7, 2006 in violation of the statute.

Defendant's argument that Plaintiffs suffer no threat of prosecution from Defendant because Defendant cannot prosecute violations of § 293.740 is not supported by Nevada law.  Section 293.740(3) makes it a gross misdemeanor to violate the statute.[3]  Section 293.740 does not specify an enforcement authority.  Under Nevada law, district attorneys and the Attorney General are charged with initiating criminal prosecutions.  See Nev. Rev. Stat. § 228.120, § 252.080.  However, Nevada law provides that the Secretary of State is the chief officer of elections "responsible for the execution and enforcement of the provisions of Title 24 of NRS and all other provisions of state and federal law relating to elections in this state."  Nev. Rev. Stat. § 293.124(1).  The Secretary of State "may provide interpretations and take other actions necessary for the effective administration of the statutes and regulations governing the conduct of primary, general, special and district

---

[2]   Defendant argues this statement is hearsay, but it is an admission by a party's agent and therefore is admissible.  See Fed. R. Evid. 801(d)(2)(D) (statement is nonhearsay when offered against a party and is a statement by the party's agent concerning a matter within the scope of the agency, made during the existence of the relationship).  Plaintiffs offer the statement against Defendant and the statement was made by Defendant's Deputy Secretary of State for Elections in the course of his duties in responding to Plaintiffs' inquiry.

[3]   As for civil penalties, Nevada law provides that such an action must be brought by a district attorney or the Attorney General.  Nev. Rev. Stat. § 293.840(1).

1   elections in this state."  Nev. Rev. Stat. § 293.247(3).[4]

2        Nevada state law specifically vests enforcement authority over election laws in

3   the Secretary of State.  Defendant has indicated he will exercise this authority and prohibit

4   exit polling within the 100-foot zone on election day.  Accordingly, Defendant may enforce

5   the statute against Plaintiffs by removing their pollsters from the 100-foot zone, even if

6   Defendant's enforcement does not ultimately result in criminal or civil prosecution.

7        Furthermore, Defendant effectively enforces the statute's criminal penalties.  In a

8   prior case, this Court found the Secretary of State was a proper defendant under similar

9   circumstances.  In Americans for Medical Rights v. Heller, the plaintiff intended to violate

10  article 2, section 10(2) of the Nevada Constitution, which limited contributions to

11  campaigns for the approval or rejection of ballot initiatives to $5,000 and set forth criminal

12  penalties for violating this provision.  2 F. Supp. 2d 1307, 1309 (D. Nev. 1998) (Pro, J.).

13  The plaintiff sought to urge passage of a ballot initiative on the legalization of medical

14  marijuana and intended to spend and seek contributions in excess of $5,000.  Id. at 1310.

15  The plaintiff sued the Nevada Secretary of State seeking an injunction prohibiting the

16  Secretary of State from enforcing the spending limits pending a determination as to whether

17

18        [4]   Other provisions of Nevada election law are more specific in identifying the Secretary of
19  State as the responsible party for initiating investigations or enforcement proceedings.  See Nev. Rev.
    Stat. § 294A.342 (requiring a county clerk, city clerk, or registrar of voters to report certain persuasive
20  polling violations to the Secretary of State, and if it appears to the Secretary of State the law was
    violated, the Secretary must report the alleged violation to the Attorney General to institute
21  proceedings); Nev. Rev. Stat. § 294A.410 (indicating Secretary of State is the entity with authority to
    investigate alleged campaign practices violations and "cause the appropriate proceedings to be
22  instituted and prosecuted" in court or refer the alleged violation to the Attorney General who "shall
    investigate the alleged violation and institute and prosecute the appropriate proceedings . . . .").  No
23  similar statute exists specifically directing the Secretary of State to initiate proceedings for violations
    of § 239.740.  However, Nevada's decision to require the Secretary of State to initiate proceedings or
24  refer violations to the Attorney General for prosecution of certain election law violations does not mean
    the Secretary of State lacks enforcement authority for other election law violations.  Rather, Nevada
25  has granted the Secretary of State general enforcement authority over all election laws.  See Nev. Rev.
26  Stat. § 293.247, § 293.124(1).

article 2, section 10(2) violated the First Amendment.  Id.

Among other defenses, the Secretary of State argued, as he does here, that the plaintiff sued the wrong entity because a district attorney, not the Secretary of State, had the authority to bring criminal actions for violating the relevant provision.  Id. at 1312-13.  In rejecting the Secretary of State's argument, this Court noted that had the Nevada legislature enacted a law implementing article 2, section 10(2) of the Nevada Constitution, it would have been codified in the campaign practices chapter, and the Secretary of State had the power to "take such action as necessary to enforce the campaign practices laws."  Id. at 1312-13 (citing Nev. Rev. Stat. § 294A.385 (1997)).[5]  Accordingly, the Secretary of State would have been the enforcement authority.  Id.  This Court further noted that the "reality is that a prosecution for violation of article 2, section 10(2) will not likely occur unless the Secretary of State notifies a district attorney of a campaign practices violation" because the Secretary of State was responsible for insuring parties followed campaign rules and parties were required to report contributions to the Secretary of State.  Id.  Therefore, the Secretary of State would be the party with knowledge of potential campaign practices violations.  Id. The Court concluded that "[s]ince the Secretary of State is the party primarily responsible for enforcing limits on contributions to ballot measures and since the Secretary of State can request that a district attorney prosecute, the fact that AMR did not include a district attorney as a defendant does not mean that there is not an adequate threat of prosecution." Id. at 1313.

Here, Nevada law specifically identifies the Secretary of State as the state officer responsible for enforcing election laws and grants him authority to "take other actions necessary for the effective administration of the statutes and regulations governing the

---

[5] The opinion cites Nevada Revised Statute § 294A.385 but should cite Nevada Revised Statute § 294A.380 (providing that the secretary of state may "take such actions as are necessary for the implementation and effective administration of the provisions of this chapter.").

conduct of primary, general, special and district elections in this state."  Nev. Rev. Stat. § 293.247(3), § 293.124(1).  Defendant has indicated, both in the October 2004 letter and in the September 2006 phone call, that he will prohibit exit polling within the 100-foot zone. Accordingly, because Defendant is the party responsible for enforcing Nevada election laws and because Defendant may expel Plaintiffs from the 100-foot zone and refer criminal violations to the district attorney or attorney general,[6] Plaintiffs' failure to include a district attorney or the attorney general as a defendant does not mean there is not an adequate threat of enforcement or prosecution in this case.

Defendant's argument that Plaintiffs themselves face no fear of enforcement or prosecution because Edison and Mitofsky employees who actually conduct the exit polling would be prosecuted is similarly without merit.  Plaintiffs have hired Edison and Mitofsky to perform exit polling on their behalf.  Suppressing Plaintiffs' agents' speech therefore suppresses Plaintiffs' speech.  Furthermore, under Nevada law:

> Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such.

Nev. Rev. Stat. § 195.020; see also Gordon v. Eighth Judicial Dist. Court of State of Nev., 913 P.2d 240, 247 (Nev. 1996) (holding indictment properly charged night club owners with aiding and abetting nightclub employees by hiring them, inducing them to use a pitch to influence patrons into believing that if they bought a bottle of non-alcoholic wine the patron would be allowed to have sex with a female employee, and by providing them with a place in which to do this).  Plaintiffs have hired Edison and Mitofsky to conduct exit polling

---

[6]   See Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 618 (9th Cir. 1999) (noting a case or controversy exists where state official "intends either to enforce a statute or to encourage local law enforcement agencies to do so") (quotation omitted).

on their behalf and the exit pollsters will wear badges and have boxes identifying them as associated with Plaintiffs.  (Lenski Aff. at ¶ 7, Exs. B & C.)  Plaintiffs therefore face enforcement and prosecution for hiring and encouraging Edison and Mitofsky employees to conduct exit polls within the 100-foot zone.

### iii.  History of Enforcement

The absence of any past prosecutions under the challenged statute may undermine a plaintiff's argument that he or she faces a genuine threat of imminent prosecution.  San Diego County Gun Rights Comm., 98 F.3d at 1128.  Where a statute has been in existence for many years but authorities never or rarely have prosecuted anyone under the law, the plaintiff may not have a well founded fear of imminent prosecution.  Doe, 410 U.S. at 188 (comparing 1879 law under which only one prosecution had been pursued with a recently enacted statute that was "not moribund").  However, a recently enacted statute or one under which prosecutions have been pursued may give rise to a well founded fear of prosecution.  Id.

The record before the Court does not reveal whether the Secretary of State or other prosecuting authorities ever have prosecuted anyone under § 293.740 for conducting exit polls within 100 feet of a polling place.[7]  However, the 100-foot zone is less than ten years old[8] and thus it would be premature to declare that historically it has not been enforced or that it has fallen into a state of disuse.  Regardless, Defendant has expressed a present intent to enforce the statute.  Additionally, a litigant may have a well founded fear of enforcement even where the statute in question previously never has been enforced.  See

---

[7]     Although Plaintiffs admit they violated the statute in 2004 with no consequences, it is unclear from the record currently before the Court whether that is because Defendant declined to enforce the statute or because Defendant was not aware at the time that Plaintiffs had violated the statute.

[8]     History of Assembly Bill 18, 69th Leg. (Nev. 1997), available at http://www.leg.state.nv.us/lcb/research/library/1997/ab018,1997.pdf.

Babbitt, 442 U.S. at 302.  Accordingly, the Court concludes Plaintiffs' concrete plan to violate the statute in the face of Defendant's communicated intent to prohibit such activity during the November 7, 2006 election creates a ripe case or controversy within this Court's Article III jurisdiction.

### b.  Prudential Ripeness

With respect to the prudential aspects of ripeness, the Court considers whether the issues are fit for judicial decision and the hardship to the parties if the court declines to address the matter.  Thomas, 220 F.3d at 1141.  "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  United States v. Braren, 338 F.3d 971, 975 (9th Cir. 2003) (quotation omitted).

Defendant does not argue the case is not ripe under the prudential component of ripeness.  While factual discovery remains to be conducted in this case, the issues raised primarily are legal.  If the Court declined to address the matter now, Plaintiffs would suffer hardship in having to choose between self-censorship or risking civil and criminal penalties on election day.  Additionally, should Plaintiffs choose to self-censor, the public is harmed through the suppression of speech.  Further, Defendant has expressed his final decision that § 293.740 applies to exit polling.  The case is ripe for adjudication in this Court.

### 2.  Eleventh Amendment Immunity

The Court also rejects Defendant's claim of immunity under the Eleventh Amendment.  The Eleventh Amendment generally bars a private party from bringing suit in federal court against a state without the state's consent.  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).  "However, the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities."  Id. (citing Ex Parte Young, 209 U.S. 123, 155-56 (1908) & Edelman v. Jordan, 415 U.S. 651, 667-68 (1974)).  To obtain prospective injunctive relief

1  against a state officer, the state officer sued "must have some connection with the

2  enforcement of the act" the plaintiff challenges.  Ex Parte Young, 209 U.S. at 157.  "This

3  connection must be fairly direct; a generalized duty to enforce state law or general

4  supervisory power over the persons responsible for enforcing the challenged provision will

5  not subject an official to suit."  Los Angeles County Bar Ass'n, 979 F.2d at 704.  State law

6  determines whether the state officer has a direct connection to enforcing the challenged law.

7  Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998).  In determining whether the defendant

8  has a connection with enforcing the law under Ex Parte Young, Article III justiciability and

9  the Eleventh Amendment analysis are closely related inquiries.  Culinary Workers Union,

10  Local 226 v. Del Papa, 200 F.3d 614, 619 (9th Cir. 1999).

11         As discussed above, Nevada law specifically vests Defendant with the power to

12  enforce election laws in Nevada.  Defendant has indicated an intent to exercise that

13  authority through his decision that § 293.740(1)(a) applies to exit polling and through his

14  stated intent to prohibit exit polling within the 100-foot zone on election day.  Plaintiffs

15  challenge both the law and Defendant's decision to apply § 293.740 to their exit polling

16  activity.  Defendant therefore has a connection with enforcing the statute and he is not

17  entitled to Eleventh Amendment immunity in this action for prospective injunctive relief.

18  Accordingly, the Court will deny Defendant's Motion to Dismiss.

19  \\\

20  \\\

21

22

23

24

25

26

**B.     EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Having determined that this Court has jurisdiction to consider Plaintiffs' Complaint, the immediate issue before the Court is whether the 100-foot barrier established by Nev. Rev. Stat. § 273.740 can be applied lawfully with respect to Plaintiffs' proposed exit polling on November 7, 2006.  The Court concludes it cannot.

### 1.  Preliminary Injunction Standard

"To obtain a preliminary injunction, a party must make a clear showing of either (1) a combination of probable success on the merits and a possibility of irreparable injury, or (2) that its claims raise serious questions as to the merits and that the balance of hardships tips in its favor."  <u>Connecticut General Life Insurance Co. v. New Images</u>, 321 F.3d 878, 881 (9th Cir. 2003).  "These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases."  <u>Faith Center Church Evangelistic Ministries v. Glover</u>, 462 F.3d 1194 (9th Cir. 2006) (quoting <u>Associated Gen. Contractors of Cal. v. Coal. for Econ. Equity</u>, 950 F.2d 1401, 1410 (9th Cir. 1991).  Further, "[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff."  <u>Sammartano v. First Judicial District Court</u>, 303 F.3d 959, 965 (9th Cir. 2002) (quoting <u>Fund for Animals v. Lujan</u>, 962 F.2d 1391, 1400 (9th Cir. 1992)).

### a.  Probability of Success on the Merits

Plaintiffs argue that they are likely to succeed on the merits because Nev. Rev. Stat. § 293.740 restricts speech in public forums based on its content and therefore can survive constitutional scrutiny only if it is narrowly drawn to accomplish a compelling government interest and is the least restrictive means available.  Defendant responds Plaintiffs are not likely to succeed on the merits because Plaintiffs' evidence is insufficient and Nev. Rev. Stat. § 293.740 is narrowly tailored to further a compelling state interest.

1    _____**i. Insufficient Evidence**

2        Defendant argues Plaintiffs' insufficient evidence eliminates the probability of

3    success on the merits, and that Daily Herald Co. v. Munro, 838 F.2d 380 (9th Cir. 1983)

4    ("Daily Herald II") requires courts to make certain factual findings in response to specific

5    questions identified in the Court's opinion regarding exit polls.  Specifically, Defendant

6    argues Plaintiffs have not provided sufficient evidence showing (1) exit polling in Nevada

7    would be conducted in a "systematic and statistically reliable manner"; (2) what specific

8    locations Plaintiffs intend to conduct their polling activities; (3) whether information

9    obtained from exit polling could be gathered effectively from another method; and (4)

10    whether exit polling is disruptive to the voting process.  Plaintiffs argue that Defendant

11    misapprehends the preliminary injunction standard and the procedural posture of the Daily

12    Herald case.  The Court agrees.

13        Defendant's assertion that this Court must resolve the factual questions cited

14    above contradicts the preliminary injunction standard.  To grant a preliminary injunction,

15    the court must "assess the plaintiff's likelihood of success on the merits, not whether the

16    plaintiff has actually succeeded on the merits."  Southern Oregon Barter Fair v. Jackson

17    County, 372 F.3d 1128, 1136 (9th Cir. 2004).  Moreover, "decisions on preliminary

18    injunctions are just that - preliminary - and must often be made hastily and on less than a

19    full record."  Id.  Thus, "the possibility that the party obtaining a preliminary injunction may

20    not win on the merits at the trial is not determinative of the propriety or validity of the trial

21    court's granting the preliminary injunction."  B.W. Photo Utilities v. Republic Molding

22    Corp., 280 F.2d 806, 807 (9th Cir. 1960).

23        Further, the procedural posture of Daily Herald distinguishes that case from the

24    one before the Court.  In Daily Herald I, 758 F.2d 350, 351 (9th Cir. 1984) the district court

25    entered summary judgment sua sponte in favor of the State of Washington upholding a

26    statute prohibiting exit polling on election day within 300 feet of a polling place.  The Ninth

1   Circuit reversed holding genuine issues of material fact remained and proceeded to identify

2   specific factual questions that the district court was to consider on remand.  Id. at 351-52.

3        On remand, the court found the statute was unconstitutional.  Daily Herald II, 838

4   F.2d 380, 383 (9th Cir. 1988).  Specifically, "[t]he district court found that the media

5   plaintiffs conducted their exit polling in a 'systematic and statistically reliable manner'; that

6   information obtained from exit polling could not be obtained by other methods; that the

7   300-foot limit precluded exit polling; and that exit polling was not *per se* disruptive to the

8   polling place."  Id.  Thus, procedurally, Daily Herald is distinguishable from this case

9   because Daily Herald was decided at the summary judgment stage, which requires that there

10  be no genuine issues of material fact remaining, and not the preliminary injunction stage,

11  which recognizes that injunctions often are granted "hastily and on less than a full record."

12       Plaintiffs have submitted three sworn affidavits describing what exit polls are, the

13  accuracy and reliability of exit polls, the value of exit polls, how exit polls are conducted,

14  why an exit poll's statistical reliability decreases when polling reporters are required to

15  stand great distances from the polling place, how exit polling information is used, Plaintiffs'

16  plans to conduct exit polling in Nevada, and the lack of any reported disruptive behavior by

17  exit pollsters.  Moreover, to the extent Nev. Rev. Stat. § 293.740 is subject to strict scrutiny,

18  Defendant, not Plaintiffs, would have the burden of showing that the statute is narrowly

19  tailored to further a compelling government interest.  See Perry Educ. Ass'n v. Perry Local

20  Educators' Ass'n, 460 U.S. 37, 45 (1983) (stating that "[f]or the state to enforce a content-

21  based exclusion it must show that its regulation is necessary to serve a compelling state

22  interest and that it is narrowly drawn to achieve that end.").  Plaintiffs are likely to succeed

23  on the merits because Defendant has not shown that statute is narrowly tailored to advance

24  the State's interest and is the least restrictive means available.

25

26

**ii. Constitutional Standard**

Plaintiffs argue Nev. Rev. Stat. § 293.740 is a content-based regulation that restricts speech in traditional public forums and therefore should be subject to strict scrutiny.  Defendant argues that the areas outside polling places are not necessarily public forums, but even if they are, the statute survives strict scrutiny because it is narrowly drawn to accomplish a compelling state interest.  Whether a strict scrutiny standard is applied or some lesser test, the Court finds the same result pertains.

The First Amendment to the United States Constitution states "Congress shall make no law . . . abridging the freedom on speech[.]"  U.S. Const. amend. I.  The First Amendment protects, *inter alia*,  "the free discussion of governmental affairs[,]" which "includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes."  Mills v. State of Ala., 384 U.S. 214, 218-19 (1966).  Accordingly, "[e]xit polling is . . . speech that is protected, on several levels, by the First Amendment."  Daily Herald, 838 F.2d at 384.  Exit polling is protected not only because "the information disseminated based on the polls is speech, but also in that the process of obtaining the information requires a discussion between pollster and voter."  Id.  Consequently, "the state may regulate exit polling only in limited ways."  Id.

The standard to determine whether a regulation restricting protected speech, such as exit polling, is constitutional "depends on whether the speech to be regulated occurs in a traditional public forum . . . and whether the [regulation] is content-based or amounts to an absolute prohibition of a type of speech."  Id. (internal citations omitted).  "A content-based statute that regulates speech in a public forum is constitutional only if it is narrowly tailored to accomplish a compelling government interest . . . and is the least restrictive means available."  Id. at 385.

Traditional public forums include streets, parks, and sidewalks.  United States v.

1  Grace, 461 U.S. 171, 177 (1983).  In Burson v. Freeman, the Supreme Court found that a

2  100-foot zone around polling locations "bars speech in quintessential public forums . . .

3  such as parks, streets, and sidewalks."  504 U.S. 191, 196 (1992); see also Daily Herald,

4  838 F.2d at 384 (stating "public areas within 300 feet of the entrance to the polling place

5  are traditional public forums because they traditionally are open to the public for expressive

6  purposes . . . and encompass streets and sidewalks.").

7          Here, Nev. Rev. Stat. § 293.740 prohibits any person from speaking to a voter on

8  the subject of marking his ballot within 100 feet from the entrance to any polling location.

9  The statute makes no exceptions for public streets, sidewalks, or other traditional public

10 forums.  Defendant relies on Justice Scalia's concurring opinion in Burson and a Sixth

11 Circuit case, United Food & Commercial Workers Local 1099 v. City of Sidney, 364 F.3d

12 738, 750 (6th Cir. 2004), to support the proposition that streets, parking lots and sidewalks

13 outside of polling places are not always public forums.

14         In United Food, the Court distinguished between public sidewalks, which are

15 public forums, and parking lots and walkways on private and school property leading up to

16 polling location entrances.  364 F.3d at 747-49.  The Sixth Circuit determined that parking

17 lots and walkways on private and school property did not temporarily convert into public

18 forums just because those locations were being used as polling places.  Here, Defendant

19 argues that many polling places in Nevada are located in churches, recreation centers and

20 schools and therefore those polling locations' walkways and parking lots are not necessarily

21 public forums.  However, the plurality in Burson and the Ninth Circuit in Daily Herald both

22 concluded, without distinguishing between private and school properties and public

23 properties, that streets and sidewalks within the restrictive zones surrounding polling places

24 are public forums.

25         The Court further finds that Nev. Rev. Stat. § 293.740 constitutes a content-based

26 restriction on speech rather than a content-neutral time, place and manner restriction.  A

statute is content-based if it regulates discussion of a specific subject matter.  Daily Herald,

838 F.2d at 385.  In Daily Herald, the Court found the statute prohibiting exit polling within

300 feet of the polling place was content-based "because it regulates a specific subject

matter, the discussion of voting . . . ."  Id.  Here, Nev. Rev. Stat. § 293.740 is a content-

based restriction because it prohibits any person from speaking to a voter on the subject of

marking his ballot inside a polling place or within 100 feet from the entrance of the polling

place.

       "A content-based statute that regulates speech in a public forum" is subject to

strict scrutiny and "is constitutional only if it is narrowly tailored to accomplish a

compelling government interest . . . and is the least restrictive means available."  Id. at 385.

The Ninth Circuit has ruled that "[s]tates have an interest in maintaining peace, order, and

decorum at the polls and 'preserving the integrity of their electoral processes.'"  Id.

Acknowledging that important state interest, Plaintiffs argue that Nev. Rev. Stat. § 293.740

is neither narrowly tailored to meet that interest nor the least restrictive means available.

       In Daily Herald, the Court found that a 300-foot buffer zone prohibiting exit

polling around polling places was not narrowly tailored to advance the state's interest in

preventing disruption and harassment at the polling place because the statute prohibited all

exit polling, including non-disruptive exit polling.  Id.; see also CBS Inc. v. Smith, 681 F.

Supp. 794, 803 (S.D. Fla. 1988) (holding that a statute prohibiting solicitation of voters

within 150 feet of polling place was not narrowly tailored because the statute "prohibits

even peaceful, thoughtful discussions with voters regarding how they voted and why.").

Further, the Court found the statute was not the least restrictive means of furthering the

state's interest because the State of Washington already had another statute prohibiting

disruptive conduct at the polls.  Id.

       Notwithstanding Defendant Secretary of State Heller's affidavit stating that he

"believes" harassment or disruptions within the 100-foot buffer zone may discourage

people from voting (Def.'s Mot. to Dismiss and Opp. to Mot. for Prelim. Inj. [Doc. #10], Ex. A, Affidavit of Dean Heller ("Heller Aff.") at ¶ 3),  Defendant has not produced any evidence that a voter has decided not to vote because of exit polls or that exit poll reporters have been the cause of harassment or disruption in the past.

The Court finds that Nev. Rev. Stat. § 293.740 is not narrowly tailored to satisfy the compelling State interests articulated here.  The pertinent provision of the statute does not prevent polling within the 100-foot buffer zone regarding political or other subjects unrelated to how a person marked their ballot.   Neither can the statute be construed as the least restrictive means of advancing the State's interest because Nevada already has other statutes at its disposal prohibiting disruptive conduct at the polls.  Nev. Rev. Stat. § 293.710 makes it unlawful for any person to use or threaten force, coercion, violence, restraint, or undue influence against any other person in connection with any election or petition.  Further, Nev. Rev. Stat.  § 293.730 prohibits a person from remaining "in or outside of any polling place so as to interfere with the conduct of the election." Accordingly, the Court finds Plaintiffs have demonstrated a probability of success on the merits.

## 2. Irreparable Harm

The Court rejects Defendant's argument that Plaintiffs have not presented evidence that exit polling more than 100 feet from polling locations will cause unreliable results and thus irreparable harm.  The Supreme Court has ruled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod v. Burns, 427 U.S. 347, 373-74 (1976).  Thus, regardless of the reliability of Plaintiffs' polls, because Nev. Rev. Stat. § 293.740 restricts free speech, it causes irreparable harm.  In addition, Plaintiffs have submitted evidence in the form of a sworn affidavit that upholding the statute would result in the loss of important voter information in this election year.  (Lenski Aff. at 4-5.)

### 3.  Balance of Hardships

The balance of hardships clearly tips in favor of Plaintiffs with respect to the enforcement of Nev. Rev. Stat. § 293.740.  If the 100-foot barrier is enforced, Plaintiffs will be encumbered in their attempts to conduct valid exit polls.  By comparison, given that the State has at its disposal a variety of statutes aimed at preventing disruptive behavior by any person, including those conducting exit polls, Defendant demonstrates no hardship if the injunctive relief requested is granted.

### 4.  Public Interest

Defendant undoubtedly takes seriously his responsibility to enforce all laws enacted by the Nevada Legislature with respect to the conduct of elections.  The compelling State interest in providing polling places where voters can exercise their franchise free of disruption or inappropriate influence is beyond cavil.  At the same time, as Plaintiffs forcefully argue, the public interest is served by robust and free debate of public issues and that their proposed exit polling serves that public interest.  The Court concludes that the positions of the parties are in fact not inconsistent and that the strong and legitimate interests of both can be accommodated by the grant of the injunctive relief requested by Plaintiffs.

Because the exit polling proposed by Plaintiffs occurs after a citizen has voted and does not interfere with or disrupt the voting interests which Defendant rightly seeks to protect, and because Defendant has not demonstrated that the 100-foot barrier is not the least restrictive or necessary means of protecting its compelling interests, the Court concludes that Plaintiffs are entitled to the preliminary injunction they seek.

\\\

\\\

III.     CONCLUSION

        IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. # 10) is denied.

        IT IS FURTHER ORDERED that Plaintiffs' Emergency Motion for Preliminary Injunction (Doc. #2) is granted and that Defendant Secretary of State is hereby enjoined from prohibiting exit polling activities of Plaintiffs within 100 feet of Nevada polling places on election day, November 7, 2006.

        IT IS FURTHER ORDERED that Defendant Secretary of State shall forthwith advise all State election officials of this Court's Preliminary Injunction Order.


DATED:   November 1, 2006


_____
PHILIP M. PRO
Chief United States District Judge